Please call the next case. Good morning, your honors. My name is Robert Finley. I'm here for Will County and Sunny Hill Nursing Home with Henshaw and Culbertson. Will County has lost this at every level. And the question that we continue to try to ask and have answered is whether the petitioner is OTTD in a circumstance where there's evidence that she's working. And we know in some cases they can, and there's also cases where they can't. And the first issue that we have is that none of the lower courts, based on our reading of it, have applied or even stated the right rule or test. And that brings us to your stable market test that you were arguing. Correct. I mean, traditionally we talk about whether or not the claimant has reached maximum medical improvement. And how do you respond? And I understand your argument. It has some intuitive appeal. It's a novel argument. But how do you respond to this? Yeah, that's, that's, that's, we see your point, but that's just a factor in the analysis. Whether there's a market on TTD should not be a dispositive consideration. The maximum medical improvement, yeah, they can take into consideration that factor, if you call it a test. But why does that carry the day? Zenith, Supreme Court case from about 30 plus years ago. It needs to be addressed or reconciled, at the very least, by this appellate court. Because it's a different set of circumstances where MMI may not be the dispositive fact. And we believe this is one of those cases. And we, because what you have is evidence in terms of testimony and some surveillance to suggest that she's working. There's also corporate records from her flower endeavor. Let me clarify your point. I saw the cases, Jones, Zenith, Mechanical, Dulce, those cases I understand, consider the claimant's earnings and work as a factor, but not necessarily the dispositive factor in determining whether the claimant was entitled to TT benefits. Is that a fair statement? Will County is reading those cases that if there is evidence, let me take a step back, if one is claiming to be temporarily and totally disabled, meaning one cannot work or is unable to work, and then there is evidence suggesting that the individual is working, MMI is not your dispositive test at that point in time, arguing about the stabilization of one's physical condition. What we find, because of the evidence of work, is that they are not arguably totally disabled. Thus, the court undertakes an analysis to determine whether that work is of the quantity, quality, and dependability to render one no longer totally disabled, which is what the benefit is supposed to pay for. All right. Well, let me just throw this back at you. Do we necessarily have to reach that issue and even get into the stable market test theory? Because can't this case turn on what is meant by the word return to work? The Commission clearly found that the claimant didn't really return to work. So if we find that their reasoning on that is persuasive, then we really don't even need to get into the stable labor test and reach that, do we? I think it's a distinction without a difference. I think work is equated to the stable labor market. You have to look at what the nature of that activity is. The majority of the time she spent babysitting for her grandchildren while she was sitting at the flower shop. That was the evidence. And your surveillance records don't contradict that. She goes to the place. She helps her daughter on occasion. Three days a week she goes there. And her primary function is to watch her grandchildren playing and babysit for them while their daughters are working, just because she owns the place. That's her characterization and one that the Commission adopted. But there are other facts, other evidence in the record that are not contradicted, i.e., her ownership interest in it, her role as President and Secretary. Excuse me. I don't know of a single case that says you're not entitled to TTD because you own a business. There are cases that say working at a business is not an entitlement to TTD. But do you have a case that says because you own a business, you don't get TTD? Factually, here, she did testify that she undertakes other work activities. I'm not talking about TTD. I take it your answer to my question is no, you have no such case? I don't know that a case has been decided on that issue that I have found. You don't seriously think that someone would actually hold it because you own a business? You're not entitled to TTD, would you? Well, what else are you doing? We have Presidents of corporations and owners of corporations that are getting TTD from their own companies. But what are they doing in terms of the owner's interest? That's an interesting question. This Commission found, excuse me, this Commission found that she was babysitting. She told the arbitrator that she hires people, that she's the one who also handles some customer service when she's there. And she answered the phone. You did testify to that. Yeah. Occasionally, she answers the phone. She retrieves faxes. She assists customers if her guards are occupied. And at times, she may present minor assistance when they're making flower arrangements, making occasional deliveries. So the conclusion that there's no work, it's a very narrow definition of work. It didn't say no work. The arbitrator wrote no work. She didn't return to work. He wrote no work. What did the Commission say about, they didn't deny she went there. True. But they didn't deny that she answered the phone, or answered faxes, or assisted in minor preparation of flower arrangements, did they? Well, they certainly, the arbitrator certainly didn't include that in the decision, and the Commission rubber-stamped it. But there is evidence in the records, you're right, Your Honor, that she did those things. Who decides whether the level of work that she does is sufficient to say she has returned to the labor market and is not entitled to TCD? I think that the Commission has the discretion to do that. Or if all of these facts are uncontradicted, that this Court can apply the right rule to the analysis. And what would that right rule be? Whether this is a reasonably stable labor market. That has nothing to do with it. What do you mean, working in a flower shop is a reasonably stable labor market? She gets no TCD whether she's working one hour a week or 40 hours a week? Is that your argument? Potentially, yes. That makes no sense. You have to do the analysis. Excuse me, that makes no sense. You have to do the proper analysis. It's a question of how much work does she do, not whether she's doing minimal work within a labor market. That's only one of the considerations when you look at reasonably stable labor market, quality, dependability. You're the one that wants to look at a reasonably stable labor market, not me. Because I think you're way off base with the argument. And I don't mind telling you right here. I get to the question of whether the amount of work she's doing takes her out of the right to TTD. Not whether she's doing it within a job that's within a stable labor market. But that is part of the stable labor market test, Your Honor. You are applying it. But only one of the several factors that are included in it. It's not just the quantity. It also looks at the dependability of it. If you look at the macroeconomic version, that's one of the things that they did in Dolce. When they talked about how real estate brokers compete against each other, those sort of flower shops. We can go back and forth in this interesting dialogue all morning, but it doesn't get to the point I was trying to reach. And the arguments are very legitimate going back and forth. Was her presence there, to me, constitute a return to work? And I think what he is saying is that how do you ever get into the stable labor market test, if you even believe it should apply, where somebody theoretically can be having, often TTD, they own a business and they show up for ten minutes just to look around and they leave. If the commission doesn't find that it is return to work, I'll ask you again, how do we get into the stable labor market test if the person never returned to work? Don't you have to answer that question first? Yes. You have to answer what work is. Right. Yes. And then you get into the test. Well, yes. But the labor market test talks about the work. That's where it comes from. Okay. You are applying the test and we don't see it. I've just bitten my tongue here, but you continually refer to the stable labor market test. Give us the rules of that test and the source for that test. Zenith is your source, a 1982 decision from the Supreme Court. There is some intermittent appellate court decisions you can also look at, in particular Dolce. What is the test? What the nature of the test is is that it looks factually at the quantity, quality, and dependability of the work. I mean, can you state the rule? That is the rule. The rule is has this individual returned to a reasonably stable labor market, and they look at the market. Okay. So you're saying if X, then Y. That's a rule. If that individual has returned to work in a reasonably stable labor market, then they are to be denied TTD. Yes. Is that the rule? What case says that? Zenith. Okay. Can you cite the page? Can you read the language? I've read Zenith. I don't see that. Okay. If you trace the lineage of this language, reasonably stable labor market, I mean, you go back to ER Moore, right? Yes. Okay. Zenith quotes back to ER Moore, and ER Moore is PTD, right? Yes, permanent total. Okay. Yes. I mean, what I'm getting at here, you know, putting aside the very cogent remarks here that have been expressed in terms of whether or not there, in fact, was a return to work, and the commission certainly made its determination that there hadn't been under the facts of this case, this venturing out into what I would consider to be new waters, that being creating a new test, doesn't find a firm basis in the law. And I don't think Zenith says what you say it says. Well, that is the way that we are reading it, Judge. Thank you. Thank you, counsel. There's a sub-issue on causation, but we're going to stand on the brief on that. Very good. Thank you. Thank you. Counsel, you may respond. May it please the Court, Counsel Daniel Capron for the FLE. I hope you don't hold it against me if I don't take my full 15 minutes. I am merely here to say that the commission is empowered to make the call on whether or not the threshold issue of whether there's been a return to work has been met. In this case, there were, I suppose, facts on both sides, if you could call it that. I suppose the commission could have interpreted the occasional receipt of fax transmissions and answering the phone, et cetera. Wait a minute. Hold on a second. Where did we ever get the idea that the commission said she didn't return to work? From the decision. No, it doesn't say that. May I quote from it? I'll read it to you. That her operated day-to-day business by her daughters does not constitute a return to work in the sense of disqualifying her from the receipt of TTD benefits. That's what I was going to quote. That means that the return to work has not risen to the level of disqualification. It doesn't mean she didn't work. They said she worked. They said she performs no work but will occasionally assist her daughter by babysitting, answering the phone, receiving faxes, or assisting customers in the shop when the shop is busy. Now, that's not work to them to the level necessary to disqualify her from TTD, but it's ludicrous to suggest that assisting a customer is not some form of work. I'm not. So this interpretation that the commission has found she never returned to work doesn't exist. She didn't return to work to the level necessary to disqualify her from TTD. That's what this commission did, and that's their job to do, at least as I see it. Your Honor, Justice Hoffman has just stated my position far more eloquently than I could have. That's exactly what I'm trying to say. And so there is. But for opposing counsel, he was talking about stable labor market. That's what you have to throw in then if you adopt that interpretation, because you've got to say, does this level of activity being performed by the claimant, does it rise to a stable labor market out there? Your Honor, counsel wants to play a game of gotcha because the commission did not utter the magic words. Nowhere in this decision does the commission use the magic words, reasonably stable labor market. And yet, the sentence that Justice Hoffman just quoted, and on which I rely very heavily, essentially articulates that test using other verbiage. Well, aren't you falling into your opponent's trap by saying that those are magic words that have to be mentioned? No. My argument is the opposite. I'm saying we're not here to play a game of gotcha and to look for the utterance of magic words. Well, to say that they're magic words results in some inference that they are necessary. And that is my opponent's position. Okay. With which I vehemently disagree. Can you answer one final question? Yes, Your Honor. If the commission finds, as was alluded to, that the level of her activity at work does not rise to the level of disqualifying her for benefits, DTD benefits, again, do you ever get to the stable labor market so-called test? Does that have to be answered? Here, you know, this is like, to me, this is like taking a stick and stirring up a mud pot. The theory here is that she occasionally assisted her daughters in a sporadic and infrequent manner. That's what the commission found. Now, whether she did that within some recognized labor market or she did that because she was creating widgets in her backyard where there was no market for widgets, to me is wholly irrelevant. The question is, she did it sporadically, she did it infrequently, did it rise to the magnitude of work necessary to disqualify her from DTD benefits? The commission said no. That's their job. That's not our job. That's their job. I can understand the argument if you had surveillance film showing her there for eight hours a day, five days a week, lifting flower bundles for four of the hours, and then the commission turning around and saying it didn't rise to the level of sufficient work to disqualify her from DTD. But that's not what we have here. And so, again, you're going to rest on the position of Justice Hudson. Justice Hudson, you have nailed it again. If there are no other questions? Thank you, Your Honor. No, there are not. Counsel, you may reply. Three points. Number one, I'm not trying to set any trap. If there's truly not a reasonably stable labor market test for TTD, let's say it. It has been interpreted that way, though, over the years. So let's clear it up for the practitioners, number one. Number two, just reading from the decision, middle of the page, in support of the decision for temporary total disability, she performs no work, but will occasionally assist her daughters by babysitting, answering the phones, retrieving faxes, or assisting customers if the shop is busy. And at the bottom, it is apparent the petitioner's partial ownership interest in a local flower shop does not constitute a return to work. The argument is broader than partial ownership interest. It goes towards also the quantity and quality of the activities she performs. Don't miss two sentences below that. Her trips to the flower shop to visit with and occasionally assist her daughters are sporadic and infrequent. Yet every time the surveillance guy went out there, he found her working there. So there's a fit. That is their discretion. I agree. But it's certainly a curious conclusion. Well, but the fact of the matter is, what this boils down to is she worked enough to take the TTD away from her. That's all it is. Let's say that that's the rule, then, and apply it. And they never said it. It ends up being a mishmash that, you know. We should say that. Thank you. Okay. Judges? Thank you, counsel, both, for your arguments. This matter will be taken under advisement. Red disposition will issue. The court will stand in brief recess.